(137 So. 849)

## LIVINGSTON LUMBER CORPORATION, Inc., v. SPRINGFIELD LUMBER CO., Inc.

### No. 28549.

### Nov. 3, 1931.

S. S. Reid and Rownd & Warner, all of Hammond, for appellant.

Kemp & Buck, of Amite, for appellee.

BRUNOT, J.

The plaintiff owned a large acreage of timbered lands in the parish of Livingston. The defendant owned and operated a sawmill in that parish. On October 4, 1918, the litigants entered into a contract, wherein the plaintiff agreed to sell and the defendant to buy, upon a stumpage basis, 45,748,000 feet of the plaintiff's timber. The defendant operated its sawmill under this and supplemental contracts, all of which are in the record, from October 4, 1918, until May 16, 1925, on which date the parties entered into the contract upon which this suit is based. The contracts between the parties of date prior to the contract sued upon

are not material, except that the operations of the defendant under them resulted in an admitted indebtedness by the defendant company to the plaintiff company, on May 16, 1925, of $124,000. This indebtedness, and the agreement of the parties with reference thereto, is set forth in the contract of May 16, 1925, from which we quote the preamble and paragraphs 1, 2, 3, 12 and 13:

"This agreement entered into this day by and between the Livingston Lumber Corporation, Inc., of the Parish of Orleans, herein represented by William Winans Wall, President, and the Springfield Lumber Company, Ltd., of the parish of Livingston, herein represented by its president E. T. Cullom, both appearers being hereto authorized by resolution of their respective Board of Directors,
"Witnesseth :

"1. That the contract for sale of timber heretofore made between these parties on October 4th, 1918, as amended by supplemental contract of December 22nd, 1922, is hereby amended in the following respects, to-wit:

"2. That the total indebtedness of the Springfield Lumber Company, Ltd., to the Livingston Lumber Corporation, Inc., is hereby fixed at the sum of Sixty-two thousand dollars ($62,000.00), the said Livingston Lumber Corporation, Inc., hereby releasing, remitting and abandoning all claims against the Springfield Lumber Company, Ltd., in excess of said sum except as hereinafter stated, which said indebtedness shall bear interest at the rate of six per cent (6%) per annum from this date until paid.

"3. The Springfield Lumber Company, Ltd., has this day paid Livingston Lumber Corporation, Inc., on account of the aforementioned indebtedness, the sum of Twenty thousand dollars ($20,000.00), receipt of which is hereby acknowledged, and the balance of Forty-two thousand dollars ($42,000.00) shall be paid in monthly instalments of One thousand seven hundred and fifty dollars ($1,750.00), each on the 10th day of June, 1925, and monthly thereafter until paid. Payments to be made at the office of Livingston Lumber Corporation, Inc., in New Orleans, La. If cutting exceeds 400,000 for any month the next payment shall be increased by $4.00 per thousand on such excess."

"12. The amount due by Springfield Lumber Company, Ltd., to the Livingston Lumber Corporation, Inc., under the original contract this day is fixed at $124,000.00 from which are to be deducted the payments of $20,000.00 and $3,450.00 herein mentioned and any subsequent payment in case of default by Springfield Lumber Company, Ltd., under this amended contract.

"13. Default by the Springfield Lumber Company, Ltd., under this contract shall ipso facto and without notice cause all amounts due under the original contract, subject to credits to become due and exigible at once."

The defendant continued the operations of its sawmill under the contract of May 16, 1925, and it made the stipulated monthly payments of $1,750 for sixteen consecutive months. It is alleged that, during the month following the sixteenth stipulated monthly payment, the defendant defaulted as to that payment when it became due, and this suit followed. The sum sued for is $71,372.29, and, as the vendor of all timber then in the possession of the defendant, the plaintiff had said timber sequestered.

The defense to the suit is a plea of payment. The defendant also reconvened and prayed for judgment, in reconvention, decreeing the defendant to be the owner of the sequestered timber, and for judgment against the plaintiff for such amount as may be found to be due the defendant by the plaintiff upon

a casting of the accounts between them. The defendant also reconvened for damages in the sum of $100 per day for the wrongful seizure of its property, and prayed for judgment therefor, with reservation of its right to sue for other and further damages.

The trial of the case resulted in a judgment in favor of the plaintiff and against the defendant for the full amount claimed in the petition, with 6 per cent. per annum interest thereon from judicial demand; recognizing the plaintiff's vendor's lien and privilege upon the property sequestered; maintaining the sequestration; and rejecting the defendant's reconventional demands, with costs of the suit. The defendant perfected a devolutive appeal from the judgment.

We have read the record carefully and have reached the conclusion that the defendant defaulted in the payment of the installment due, under the contract of May 16, 1925, on October 10, 1926, and, for that reason, the following provision of the contract, which is the law between the parties to it, immediately became enforceable: "Default by the Springfield Lumber Company, Ltd., under this contract shall ipso facto and without notice cause all amounts due under the original contract, subject to credits, to become due and exigible at once."

The accounts between the litigants prior to May 16, 1925, were definitely adjusted by the contract of that date. There is no allegation of fraud in defendant's answer, but, under an allegation of its ignorance of the omission from the plaintiff's account of certain credits, made prior to May 16, 1925, to which it was entitled, testimony was admitted, over the objection of plaintiff's counsel, to show that fact.

We have read the testimony carefully, and our appreciation of it as a whole convinces us that the defendant was given proper credit for every payment made to the plaintiff by it, or by others for its account, both before and since the date of the contract of May 16, 1925.

It therefore follows that both the facts and the law are with the plaintiff. The judgment appealed from is therefore affirmed, at appellant's cost.